**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:19-CR-259-03** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ANDERSON ORTIZ** | : | |

## MEMORANDUM AND ORDER

### I.   Introduction

Anderson Ortiz is a young man whose youth has been marked by criminal activity beginning when he was a juvenile, including escape, drug trafficking and firearms charges. In addition, Ortiz is now charged federally with conspiracy to distribute controlled substances, delivery of controlled substances, and possession of firearms in furtherance of this drug trafficking activity. Ortiz has also been charged with possession of contraband while in prison. (Doc. 152 Ex, B). Thus, Anderson Ortiz is a criminal defendant who is alleged to have persisted in criminal activity even while he has been confined in jail. Simply put, it is alleged that Ortiz cannot even obey society's rules when he is held in jail.

Notwithstanding this constellation of factors which cautions against the defendant's release, this case now comes before us for consideration of a motion for temporary release of the defendant filed pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i).

In the instant case, the "compelling reason" which the defendant asserts justifies the defendant's temporary release from pre-trial detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is fully briefed by the parties, and we have afforded all parties the opportunity to make evidentiary presentations in support of their respective positions regarding temporary release for the defendant. Therefore, this motion is ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED.

## II.   **Factual Background and Procedural History**

On August 14, 2019, the defendant was charged by way of a criminal complaint with the distribution of a controlled substance in violation of 21 U.S.C. § 841(a). Following the defendant's arrest, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial. Initial proceedings were then conducted in this case on August 15, 2019.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance abuse, and criminal record: The defendant was 20 years old at the time of his arrest and was a lifelong resident of Harrisburg, Pennsylvania. He was living with his grandmother and his uncle at the time, and he was reportedly working at his sister's business, although his employment information was not verifiable. He reported that he had asthma and back pain but was otherwise in good health, and he used illicit substances beginning when he was 11 years old. Ortiz's criminal history began when he was 12 years old and included juvenile adjudications for possession of controlled substances, escape, and possession of firearms by a minor. The report indicated that Ortiz posed a risk of flight and a danger to the community based on the following characteristics: the defendant's substance abuse and criminal history, his

unexplained assets and lack of verifiable employment, the nature of the instant offenses, and his history of violent behavior.

Following these initial proceedings, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as required. On this score, we specifically found that the following factors supported the pre-trial detention of the defendant: his prior criminal history, a history of violence or use of weapons, prior failure to appear in court and prior attempts to evade law enforcement.

Ortiz was then indicted on these federal charges on September 11, 2019. Initial proceedings were held on September 24, 2019, and we ordered the defendant's continued detention at that time. Following these initial proceedings, a superseding indictment was filed, charging the defendant with additional drug trafficking charges, as well as possession of a firearm in furtherance of this drug trafficking activity. Initial proceedings were held with respect to the charges filed in the superseding indictment, and we again ordered the defendant's continued detention.

While Ortiz was in custody awaiting trial on these federal charges, it was alleged that he was found to be in possession of contraband in prison, a violation of state law. This contraband possession case is pending against Ortiz and provides

graphic proof of the defendant's recidivism since Anderson Ortiz has been charged with crimes committed while he was in jail awaiting trial for these federal crimes.

The instant motion for temporary release does not focus upon or directly challenge any of these initial detention findings or determinations. Instead, the defendant's motion for release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease. In addition, the defendant contends that he has asthma, which puts him at a higher risk of contracting the virus.

The Government, in turn, opposes this motion, arguing that the defendant has not met his burden to justify his release pending trial. We agree, and for the reasons that follow, we will deny the defendant's motion.

## III.   Discussion

### A. Temporary Release Under 18 U.S.C. § 3142

While cast as a motion seeking temporary release under 18 U.S.C. § 3142 (i), this motion is best understood and evaluated in the context of the Bail Reform Act as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq*., Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." Id.; see also United States v. Salerno, 481 U.S. 739, 755 (1987).

In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no

condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i). Until recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such

motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his

body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original decision to detain the offender pending trial. Thus, "in considering the propriety of temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under § 3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."
> § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

In addition, a defendant seeking pretrial release must demonstrate that he does not pose a risk of flight or a danger to the community. This remains the case even where COVID-19 has been reported in the correctional institution where the defendant is housed. In such instances we are still enjoined to carefully consider the public safety and risk of flight considerations mandated by law which led to the initial detention of the defendant. Indeed, it appears that this may often be the determining factor for many defendants seeking pretrial release from such institutions. See, e.g., United States v. Gumora, 2020 U.S. Dist. LEXIS 65749 (S.D.N.Y. Apr. 14, 2020) (denying release to defendant with HIV; asthma; high blood pressure; and various heart conditions including arrhythmia, tachycardia, and bradycardia despite an outbreak in the prison facility involving 13 confirmed cases because the defendant could not be trusted on conditions of release); United States v. Porter, 2020 U.S. Dist. LEXIS 64060 (E.D. Mich. Apr. 13, 2020) (denying release

to defendant with asthma and COPD despite some 184 confirmed cases of COVID-19 with at least two deaths because the defendant could not be trusted on release conditions); United States v. Passley, 2020 U.S. Dist. LEXIS 62814 (E.D.N.Y. Apr. 9, 2020) (denying release to inmate in an institution with an outbreak of 12 individuals where defendant had a compromised immune system, but presented as a flight risk who had violated conditions of release in the past); United States v. Conley, 2020 U.S. Dist. LEXIS 66610 (S.D.N.Y. Mar. 31, 2020) (defendant not released despite multiple inmates testing positive and his underlying medical conditions because he could not be trusted on conditions of release). But see United States v. McDuffie, 2020 U.S. Dist. LEXIS 59594 (S.D.N.Y. Apr. 3, 2020) (granting presentence release for defendant with rheumatoid arthritis, high blood pressure, and cardiac issues where cases in the correctional institution increased rapidly in a few days and where conditions of release could be imposed to assure safety); and United States v. Jackson, 2020 U.S. Dist. LEXIS 68045 (E.D.N.Y. Apr. 17, 2020) (granting release where defendant had asthma with an inhaler, could be trusted on release conditions, and facility saw a dramatic increase in cases with inadequate testing capabilities).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.

**B.  The Defendant's Motion for Temporary Release Will Be Denied.**

Our analysis of this motion begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). This is true even

when an institution has experienced confirmed cases of COVID-19 among staff and inmates. See e.g., Porter, 2020 U.S. Dist. LEXIS 64060; Passley, 2020 U.S. Dist. LEXIS 62814.

In the instant case, Ortiz contends that he suffers from asthma, but beyond his declaration there is no clinical evidence confirming this diagnosis, no indication that he takes any medication for this condition, and no evidence that he experiences difficulties because of his condition. To the contrary, at the time he was arrested, Ortiz reported that he was not taking any medications. Moreover, simply alleging the existence of a medical condition, while a prerequisite for a motion for temporary release, standing alone is not sufficient to justify release. See, e.g., United States v. Brown, Crim. No. 1:19-CR-259 (M.D. Pa. May 4, 2020) (denying pretrial release for defendant suffering from asthma, high blood pressure, diabetes, and various mental health issues); United States v. Serrano-Munoz, Crim. No. 1:17-CR-233 (M.D. Pa. Apr. 29, 2020) (denying release for defendant with type-2 diabetes and high blood pressure); United States v. Young, 2020 U.S. Dist. LEXIS 76573 (N.D. Ind. Apr. 30, 2020) (denying release for diabetes, diabetic retinopathy, high blood pressure, and high cholesterol). These cases are particularly important to our analysis here, as the defendant has not provided us with medical records concerning his condition.

Moreover, the defendant does not provide us with any evidence to suggest that his proposed release would mitigate his risk to exposure of COVID-19 or the risk to others. Rather, the motion asserts generally that Dauphin County Prison has recently tested its staff and inmates and have at least twenty-one confirmed cases of COVID-19 within the prison, and he asserts that the prison does not allow for proper compliance with procedures that tend to limit the spread or exposure of the virus. Indeed, according to updates from the United States Marshals Service, Dauphin County Prison has seen at least twenty-one confirmed cases of COVID-19 in its facility. Exacerbating this development is the fact that these cases are largely comprised of asymptomatic carriers—those notoriously difficult to diagnose and contain.

While this development has given us some pause, and indeed makes this a closer case, we must still weigh these health concerns against the substantial public safety considerations which led us to order the defendant's detention in the first instance. In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community. On this score, we found that his prior criminal history, history of violence or use of weapons, prior failure to appear in court and prior attempts to evade law enforcement were particularly troubling. Indeed, the defendant was adjudicated delinquent on an escape charge as well as drug trafficking and firearms charges, charges that mirror

the instant federal offenses in this case. In addition, Ortiz has encountered further legal trouble since his detention hearing, having been charged with possession of contraband while detained in Dauphin County Prison. (Doc. 152-2, at 2). This is a profoundly disturbing fact since it indicates that Ortiz has refused to obey the law even when he has been held in jail. The defendant's motion does not address these very serious and grave considerations that ultimately led to the defendant's detention in the first instance, nor does it consider the risk to the community should the motion for release be granted.

Nor has Ortiz provided us with a meaningful release plan. In this regard, we are constrained to note that Ortiz has presented us with no responsible third party custodian which would mitigate this grave risk of light or danger to the community. Thus, Ortiz invites us to offer him an alternative to pre-trial detention without explaining what that alternative might be.

Finally, to the extent the defendant raises Eighth Amendment concerns relating to a prisoner's incarceration in a custodial setting during this pandemic, this argument fails as a matter of law for several reasons. At the outset, Ortiz's reliance upon the Eighth Amendment is misplaced. As a legal matter it is well-settled that "[p]retrial detainees are not within the ambit of the Eighth Amendment but are entitled to the protections of the Due Process clause." Boring v. Kozakiewicz, 833 F.2d 468, 471 (3d Cir. 1987). We note that the defendant is a pretrial detainee, and

as such, does not have a claim under the Eighth Amendment regarding the conditions at Dauphin County Prison. See Graham v. Connor, 490 U.S. 386, 392 n. 6 (1989) (holding that "the Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction'"); Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005). Rather, a pretrial detainee's claims regarding the conditions of his confinement fall within the ambit of the Fifth Amendment's Due Process clause, and the proper inquiry is "whether [the conditions of confinement] amount to punishment of the detainee." Bell v. Wolfish, 441 U.S. 520, 535 (1979); see also Davis v. City of Philadelphia, 284 F.Supp.3d 744, 752 (E.D. Pa. 2018); Umarbaev v. Lowe, 2020 WL 1814157 (M.D. Pa. April 9, 2020) (Kane, J.).

On this score, it is well-settled that pretrial detention under 18 U.S.C. § 3142, on its face, does not violate the Fifth Amendment Due Process Clause. United States v. Salerno, 481 U.S. 739, 742 (1987). Rather, only when the conditions amount to punishment, and the detention is not reasonably related to a legitimate penological goal, are a pretrial detainee's due process rights violated. See Bell, 441 U.S. at 539; Habbard, 399 F.3d at 159-60. Thus, "[a]bsent showing of an expressed intent to punish on the part of the detention facility officials, ... if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" United States v. Cook, No. 3:16-CR-312 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.) (quoting Bell,

17

441 U.S. at 538-39). Specifically, in the context of the recent COVID-19 pandemic, several courts have declined to hold that a pretrial detainee's due process rights are violated simply because they are incarcerated and at a higher risk of contracting the virus. See e.g., Cook, No. 3:16-CR-312 (M.D. Pa. April 22, 2020) (Mehalchick, M.J.); United States v. Frost, 2020 WL 1899561, at *4 (E.D. Mich. April 17, 2020); United States v. Leake, 2020 WL 1905150, at *5 (D.D.C. April 17, 2020); United States v. Stevens, 2020 WL 1888968, at *5 (E.D. Pa. April 16, 2020).

Here, the defendant asserts that the conditions at Dauphin County Prison are inadequate and further expose pretrial detainees to the dangers of contracting COVID-19. While a number of the conditions alleged by Ortiz would clearly be uncomfortable and unpleasant, nothing in Ortiz's presentation supports an inference that prison officials are imposing these conditions on the defendant as a punitive measure. Quite the contrary, the Government has provided us with updates from the Dauphin County Prison that outline the precautionary steps taken by prison officials to combat the contraction and spread of COVID-19 in the prison. While there have recently been several confirmed cases of COVID-19 from Dauphin County Prison, the prison took steps to quarantine these individuals and have implemented testing procedures for the inmates and staff within the prison. Thus, we find that the defendant has not shown that the conditions of his confinement at Dauphin County Prison have violated his right to Due Process under the Fifth Amendment.

Further, even if we accepted Ortiz's invitation to assess the defendant's challenge to these prison conditions under the Eighth Amendment, this claim would still fail. Under the Eighth Amendment, a prisoner's rights are violated when prison officials are deliberately indifferent to a serious risk of harm. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In short, when "analyzing deliberate indifference, a court must determine whether the prison official 'acted or failed to act despite his knowledge of a substantial risk of harm.' A prisoner plaintiff must prove that the prison official 'knows of and disregards an excessive risk to inmate health or safety.'" Garvey v. Martinez, 2010 WL 569852, at *6 (M.D. Pa. Feb. 11, 2010) (quoting Farmer, 511 U.S. at 837, 841)). As we have noted:

> "When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.' Hudson, 503 U.S. at 9, 112 S.Ct. 995, 117 L.Ed.2d 156." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.2000).

Smith v. Donate, No. 4:10-CV-2133, 2012 WL 3537017, at *13 (M.D. Pa. June 15, 2012), report and recommendation adopted, No. 4:10-CV-2133, 2012 WL 3537008 (M.D. Pa. Aug. 15, 2012). Further, it is undeniably clear that "the Constitution does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400, 69 L. Ed. 2d 59 (1981).

Judged by these exacting standards, Ortiz's Eighth Amendment conditions of confinement claims fail. On this score, the evidence indicates that the prison officials have not been deliberately indifferent to the defendant's needs, but rather are taking affirmative steps to prevent the outbreak and spread of COVID-19. While there have been some twenty-one confirmed cases of COVID-19, the officials at Dauphin County Prison have suspended regular and contact visitation, have implemented aggressive hand-sanitizing protocols, and continue to educate inmates on ways to stay safe and healthy. Protocols have been put into place throughout the prison to comply with the CDC guidelines, including keeping inmates contained in their respective housing units, allowing them out of their cells in groups of ten people or less, and giving them tablets to use in order to communicate with individuals outside of the prison. Simply put, the prison has implemented specific health and safety protocols to combat the outbreak and spread of COVID-19 in Dauphin County Prison, actions that can hardly be characterized as "deliberate indifference" that would constitute an Eighth Amendment violation.

Finally, we note that this very general and sweeping argument attacking custodial conditions at this facility is in our estimation simply too broad in its reach to constitute the type of specific compelling reason for release contemplated by § 3142(i). Indeed, if we embraced the view espoused here by Ortiz, we would be compelled to release *all* detainees housed at this facility simply because of the

general conditions of their confinement. Since Ortiz has not shown that those conditions of confinement are imposed in a punitive manner or deny detainees the minimal civilized measure of life's necessities, we will decline this invitation.

Accordingly, given that these grave concerns have not been addressed or overcome by the defendant, we will deny the motion for temporary release.

## IV.   <u>Conclusion</u>

Weighing and balancing these countervailing considerations we conclude that the safety concerns that led us to order the detention of the defendant pending trial have not been overcome by the defendant's generalized concerns regarding the spread of or exposure to the COVID-19 virus while incarcerated. Based upon these findings, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. <u>United States of America v. Lee</u>, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

An appropriate order follows.


*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 1:19-CR-259-03** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ANDERSON ORTIZ** | : | |

### ORDER

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 29th day of May 2020.


_/s/ Martin C. Carlson_____
Martin C. Carlson
United States Magistrate Judge